(107 So. 797)

### VAUGHAN v. STATE. (6 Div. 472.)

(Court of Appeals of Alabama. Oct. 27, 1925. Rehearing Denied Dec. 15, 1925.)

**1. Homicide ⬳122.**

Son's right to kill in defense of his father depends on conditions necessary to excuse father under plea of self-defense.

**2. Homicide ⬳109 — Elements of "self-defense" are freedom from fault, inability to reasonably retreat or decline combat, and present impending peril so real or apparent as to create bona fide belief of existing necessity.**

Essential elements of "self-defense" are that accused be free from fault, do nothing to provoke difficulty, be not unmindful of consequences of any wrongful word or act, that he have no reasonable mode of escape by retreat or declining combat, and that present impending peril to life or danger of great bodily harm

be so real or apparent as to create bona fide belief of existing necessity.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Self-Defense.]

**3. Homicide ⬳245—Where plea was defense of father, evidence held to show that father was in no further danger of suffering grievous bodily harm or death.**

In prosecution for homicide, where plea was defense of father, who had been knocked down by deceased with glass jug, which was broken before fatal shot was fired, evidence *held* to show that father was in no further danger of suffering grievous bodily harm or death.

**4. Criminal law ⬳1186(4).**

Where testimony of accused showed his guilt, court's rulings on trial *held* not prejudicial, if erroneous, in view of Code 1923, § 3258.

**5. Jury ⬳79(1).**

Selecting and impaneling petit jury from regular jurors sworn and impaneled for week, being substantial compliance with statute, *held* not erroneous, in view of Code 1923, §§ 8653, 8659.

Appeal from Circuit Court, Blount County; O. A. Steele, Judge.

Al Henry Vaughan was convicted of manslaughter in the first degree, and he appeals. Affirmed.

Certiorari denied by Supreme Court in Vaughan v. State, 107 So. 799, 214 Ala. 384.

See, also, 78 So. 378, 201 Ala. 472; 84 So. 879, 17 Ala. App. 383; 93 So. 256, 18 Ala. App. 511.

John A. Lusk, of Guntersville, for appellant.

As to organization of the jury, see Code 1907, §§ 7270, 7276; James v. State, 53 Ala. 381; Ellis v. State, 6 So. 768, 25 Fla. 702; 40 Cyc. 217; 24 Cyc. 345; Hill v. State, 97 So. 639, 210 Ala. 221. Admission of irrelevant evidence is an error to reverse, unless the record affirmatively shows the defendant could not have been injured. 1 Mayfield's Dig. 317; 1 Wharton, Cr. Evi. 445. There was error in the oral charge of the court. Wharton on Hom. (3d Ed.) §§ 231, 232; Washington v. State, 28 So. 78, 125 Ala. 43. As to the right of the son to strike in defense of his father, see Orr v. Stat, 102 So. 58, 20 Ala. App. 188; Perry v. State, 100 So. 842, 211 Ala. 458.

Harwell G. Davis, Atty. Gen., and Lamar Field, Asst. Atty. Gen., for the State.

The organization of the jury was in compliance with the statutes. Code 1923, §§ 8608, 8611. There was no error in the general charge of the court. White v. State, 96 So. 709, 209 Ala. 546.

---

⬳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

BRICKEN, P. J. The homicide complained of in the indictment in this case was committed by this appellant on April 15, 1917, nearly nine years ago. This case has had an unusual history. As stated in brief of appellant, it has been heretofore tried five times in the court below. One of said trials resulted in a mistrial; the other four in the conviction of the defendant. The first and second trials resulted in a verdict of guilt for murder in the second degree; the third and fifth for manslaughter in the first degree. These judgments of conviction have been reversed, once by the Supreme Court, and twice heretofore by this court. The present appeal is from a judgment of conviction for manslaughter in the first degree and a sentence of three years' imprisonment in the penitentiary.

The testimony shows without dispute that Richard, alias Dick, Stephens, the deceased, named in the indictment, was killed by this defendant, and that the wound which caused his death was a pistol shot wound, and that deceased was shot in his back between the shoulders, and that the bullet penetrated his body and lodged just under the left nipple of his breast.

[1] The defendant, as stated, admits that he killed Stephens by shooting him in the back with a pistol. He undertakes to justify himself by insisting that he shot in defense of his father, Ake Vaughan, who had been attacked by Stephens. Under the evidence in this case this defense only was available to defendant. Angling v. State, 34 So. 846, 137 Ala. 17.

The law is that a son may strike in defense of his father, but under the law this right is only coextensive with the right of the father under the existing circumstances of the particular occasion to defend himself; in other words, the son's right to kill in defense of his father depends upon the same conditions as would be necessary to excuse the father under the plea of self-defense.

[2] We will not elaborate upon the elements of self-defense. Generally, the inquiry is: (1) Freedom from fault in bringing on the difficulty. (2) Is there reasonable room and ground for escape from injury? (3) Is the threatened assault of such nature as, if perpetrated, it is likely to produce death or grievous bodily harm? In other words, the essential elements of self-defense are, first, that the defendant must be free from fault, must not say or do anything for the purpose of provoking a difficulty, nor be unmindful of the consequences in this respect of any wrongful word or act; second, there must be no convenient or reasonable mode of escape by retreat or by declining the combat; and, third, there must be a present impending peril to life or danger of great bodily harm, either real or apparent, as to create the bona fide belief of an existing necessity.

[3] The principal inquiry therefore for our determination is: Did the three elements of self-defense above enumerated exist as to Ake Vaughan, father of defendant, in the difficulty between him and the deceased? If the evidence fails to establish either one of the three, the defense here interposed would fall, and the defendant could not be held guiltless for the undisputed killing by him of the deceased. We have carefully studied the evidence before us. Under this evidence we may pretermit entirely the inquiry as to the first and second element of the law of self-defense, as above enumerated, and confine ourselves to the third only. In this connection the evidence of the defendant himself, we think, shows conclusively that at the time he fired the fatal shot into the back of the deceased, his father, Ake Vaughan, who had been knocked down by deceased with a glass jug, was in no further danger of suffering grievous bodily harm or death at the hands of deceased—that at the time the fatal shot was fired by defendant there was not present an impending peril to life or great bodily harm either real or apparent to his father. This conclusion is, as stated, based upon the evidence given by the defendant himself while testifying as a witness in his own behalf, wherein he stated:

"The jug was broken and his father down on the ground when (he) witness shot, and Stephens was doing nothing at that instance, the instance I shot. I shot him in the back. I did not go in front of him to shoot. * * * I went directly from Lecroy's house. That I did not walk on either side of Stephens to shoot, but his back was right to (me) witness when I got there, and when I shot."

There is nothing in any part of the evidence adduced upon the trial of this cause which shows or tends to show that after Stephens, the deceased, had struck Ake Vaughan, father of defendant, with the glass jug, knocking him down upon the ground, that he (Stephens) made any further attempt to strike him again, or do other violence to him. The alleged stroke with the glass jar broke it into pieces, and the evidence is without dispute that Stephens was otherwise wholly unarmed, except that some time after he was killed there was found in his pocket a closed pocket knife and a small amount of money, as testified by state witness Jim Sharp.

As hereinabove quoted, the defendant himself testified in substance that he shot Stephens in the back with a pistol and killed him, and at the time he fired the shot the jug was broken, and his father was down on the ground, and that Stephens was doing nothing at the time he fired.

We here quote with approval a portion of the court's oral charge to the jury bearing upon this subject:

"If Ake Vaughan and Stephens engaged in a difficulty, even though Ake Vaughan was not at fault in bringing about this difficulty, and Dick Stephens wrongfully and in violation of law struck him with a deadly weapon, or a dangerous weapon, and after that, and after the danger to Mr. Vaughan was over, Al Henry walked up and shot Dick Stephens because he had hit his father, if you should find that to be the truth in this case, there is no self-defense in it. The courthouse is the place to punish men for wrongs. No man can take the law in his own hands and punish another for an injury done to himself even or to anybody else. A man cannot inflict punishment, and Al Henry Vaughan could not inflict punishment that night upon Dick Stephens for any wrong or indignity Dick Stephens had done to Al Henry Vaughan's father, and, if that was the motive that prompted Al Henry Vaughan in firing that pistol that took the life of Dick Stephens, Al Henry Vaughan would be guilty, and it would be your duty to find him so. If you find he fired that pistol into Dick Stephens' body to punish him for whatever he had done to his father, it would be unlawful, and it would be intentional."

Under the law, before the defendant could have been justified in the act complained of in this case at the time he fired the shot into Stephens' back, resulting in the death of Stephens, his father, Ake Vaughan, must then and there at that time, either real or apparently been in impending peril of losing his life or suffering grievous bodily harm at the hands of Stephens. The evidence of the defendant shows conclusively that such was not the fact, and there is no evidence in this case to the contrary; therefore the killing of Stephens by defendant under these conditions constituted as a matter of law an unlawful homicide, and his conviction therefor must be sustained.

[4] This renders unnecessary a consideration by this court of the numerous insistences of error predicated upon the court's rulings to which exceptions were reserved. We do not hold that these several rulings were free from error. This court is of the opinion that under his own testimony the defendant is guilty, and we are therefore satisfied that no injury resulted to the defendant from any ruling of the court complained of in this record. Code 1923, § 3258; Harry P. Paul v. State, 105 So. 912, ante, p. 125.

[5] In the selection and impaneling of the petit jury that tried this case (regular jurors sworn and impaneled for the week), there was a substantial compliance with the statute. There appears no merit in the several insistences of error in this contention. Code 1923, §§ 8653, 8659.

From what has been said, we regard it as our duty to affirm the judgment of conviction appealed from in this case.

It is so ordered.

Affirmed.