557 So.2d 1322 (1989)
William Allen SMITH
v.
STATE.
6 Div. 835.
Court of Criminal Appeals of Alabama.
September 29, 1989.
On Return to Remand November 17, 1989.
Rehearing Denied December 29, 1989.
Certiorari Denied February 23, 1990.
*1323 George H. Jones, Alabaster, for appellant.
Don Siegelman, Atty. Gen., and Robin Blevins, Asst. Atty. Gen., for appellee.
Alabama Supreme Court 89-555.
BOWEN, Judge.
William Allen Smith was convicted of receiving stolen property in the first degree and sentenced as a habitual offender to life imprisonment. Two issues are raised in this appeal from that conviction.
On December 1, 1987, George Aplin, fleet control manager with Supreme Beverage Company, discovered that a 1983 Buick Regal automobile owned by Supreme and valued at $3,500 was missing from the Supreme lot. Aplin reported the vehicle stolen on December 2, 1987. At this time, the defendant Smith, whom Aplin knew by the name of "Charles Hill," was frequently working as extra help at Supreme.
Around 1:30 on the morning of December 12, 1987, Birmingham police officers Kelvin Dudley and Jerome McCaskey stopped a 1983 Buick Regal for an improper left turn. The driver, identified by both officers as Smith, exited the vehicle without being requested to do so and identified himself to the officers as "Charles Hill." An NCIC check revealed that the vehicle was registered to Supreme Beverage Company and that the vehicle had been reported stolen. When Dudley informed Smith that there was a problem with the vehicle and asked him to step back to the patrol car, Smith "began to run." Although Dudley caught Smith momentarily, Smith escaped after a short scuffle. After Smith escaped, the keys to the Regal were found in the ignition. Attached to these keys were several other keys, including a "brassy looking" Chrysler key. The Regal was impounded and subsequently reclaimed by Aplin.
Officers Dudley and McCaskey saw Smith again on January 24, 1988, when they were dispatched to Cooper Green Hospital to "pick him up" after his arrest for public intoxication and disorderly conduct. Upon their arrival at Cooper Green, both officers recognized Smith as the driver of the stolen Regal which they had stopped on December 12, 1987. Smith identified himself at this time as "William Edward Smith."
Also on January 24, 1988, Officer Donald Toole questioned Smith about the Regal registered to Supreme Beverage Company.[1] Smith stated that he did not know anything about this vehicle. He also informed Toole that his own car had been involved in an accident some two weeks earlier and "that the police had pulled it into Kemp's." During this questioning, Smith identified himself to Toole as both "William Smith" and "Charles Hill."
*1324 After questioning Smith, Toole went to Kemp's where he located a wrecked 1967 Chrysler New Yorker registered in the name of Charles Hill at the address which the defendant had given Toole as his address. Toole found that the Chrysler key which had been left in the stolen Regal operated the door locks and enabled him to turn the ignition switch of this New Yorker, although the engine did not start due to the damaged condition of the vehicle.
Smith did not testify. His defense consisted primarily of attacking Dudley's and McCaskey's identification of him as the driver of the Regal stopped by them on the morning of December 12, 1987.

I
Smith contends that the evidence was insufficient to support a conviction. Specifically, he asserts that the state failed to prove that he possessed the stolen car "with either intent or knowledge of the alleged stolen status of the vehicle." Appellant's Brief at 20. This contention is totally without merit.
The crime of receiving stolen property in the first degree consists of intentionally receiving, retaining, or disposing of stolen property which exceeds $1,000 in value, "knowing that it has been stolen or having reasonable grounds to believe it has been stolen." Ala.Code 1975, §§ 13A-8-16(a), 13A-8-17. Clearly, "the prosecution must prove that the accused actually knew that the property was stolen or that he had reasonable grounds to believe it was stolen." Ashurst v. State, 462 So.2d 999, 1004 (Ala.Cr.App.1984). However, it is well settled that the "possession of recently stolen goods raises a presumption that the defendant had the requisite `knowledge' [that the goods were stolen]." Goodman v. State, 401 So.2d 208, 210 (Ala.Cr. App.), cert. denied, 401 So.2d 213 (Ala. 1981). See also Ala.Code 1975, § 13A-8-16(b). In fact, both "the requisite guilty knowledge and intent for the offense of receiving stolen property `may be inferred by the jury from the possession of recently stolen property as well as [from] the facts and circumstances surrounding the entire transaction.'" Carlisle v. State, 465 So.2d 1205, 1206 (Ala.Cr.App.1984).
In this case, there was uncontroverted evidence that the Regal had been stolen. Two officers testified that Smith was driving this vehicle on the morning of December 12, 1987, less than two weeks after it had been stolen. Smith did not even attempt to explain his possession of this vehicle. Moreover, when informed by Officer Dudley that there was a problem with the vehicle, Smith ran away. It is well settled that "[e]vidence of the flight of the accused is admissible to show his consciousness of guilt." Prock v. State, 471 So.2d 519, 521 (Ala.Cr.App.1985). See also Ex parte Jones 541 So.2d 1052 (Ala.1989); Bighames v. State, 440 So.2d 1231, 1234 (Ala.Cr.App.1983).
Viewing the evidence in the light most favorable to the state and under the principles set forth at length in Dolvin v. State, 391 So.2d 133 (Ala.1980); White v. State, 546 So.2d 1014 (Ala.Cr.App.1989); and Cumbo v. State, 368 So.2d 871 (Ala.Cr.App. 1978), cert. denied, 368 So.2d 877 (Ala. 1979), we find that it is clearly sufficient to support Smith's conviction.

II
Smith contends that the trial court erred in admitting Officer Toole's testimony concerning the ability of the Chrysler key which was found in the stolen Regal to operate the door locks and ignition switch of Smith's Chrysler. He maintains that this evidence should have been suppressed as having been obtained during an illegal warrantless search. The state asserts that the vehicle had been abandoned by Smith and, consequently, that no warrant was required.[2]
*1325 "A warrantless search or seizure of property that has been `abandoned' does not violate the fourth amendment. See e.g. Abel v. United States, 362 U.S. 217, 241, 80 S.Ct. 683, 698, 4 L.Ed.2d 668 (1960). `When individuals voluntarily abandon property, they forfeit any expectation of privacy in it they might have had.' United States v. Jones, 707 F.2d 1169, 1172 (10th Cir.) (citation omitted), cert. denied, 464 U.S. 859, 104 S.Ct. 184, 78 L.Ed.2d 163 (1983). The test for abandonment in the search and seizure context is distinct from the property law notion of abandonment: it is possible for a person to retain a property interest in an item, but nonetheless to relinquish his or her reasonable expectation of privacy in the object. See e.g., United States v. Colbert, 474 F.2d 174, 176 (5th Cir.1973). To determine whether there is abandonment in the fourth amendment sense, the [trial] court must focus on the intent of the person who is alleged to have abandoned the place or object. See United States v. Anderson, 663 F.2d 934, 938 (9th Cir. 1981). The test is an objective one, and intent may be inferred from `words spoken, acts done, and other objective facts.' Colbert, 474 F.2d at 176."
United States v. Thomas, 864 F.2d 843, 845 (D.C.Cir.1989) (footnote omitted). See also, Lewis v. State, 518 So.2d 214, 217 (Ala.Cr.App.1987). Where the prosecutor seeks to rely on abandonment, however, he must establish this fact by "clear and unequivocal" evidence. United States v. Moody, 485 F.2d 531, 534 (3d Cir.1973); United States v. Abbott, 584 F.Supp. 442, 451 (W.D.Pa.), affirmed, 749 F.2d 28 (3rd Cir.Pa.1984). Cf. King v. State, 521 So.2d 1042, 1046 (Ala.Cr.App.1987), cert. denied, 521 So.2d 1050 (Ala.1988) (When a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he must establish by "clear and positive testimony" that the consent was freely and voluntarily given).
At the hearing on Smith's motion to suppress, the only evidence offered by the state to establish Smith's abandonment of the car was the testimony of Officer Toole. Under questioning, Toole stated variously that: Smith's car "was left in the street, and it was pulled into Kemp's"; "Mr. Hill [Smith] told me it was abandoned in the street because it was wrecked, and it was pulled into Kemp's"; and "my understanding it [sic] was involved in a wreck and left abandoned in the street." Toole's trial testimony on this matter was that "he [Smith] told me it had been towed in because it had been abandoned in the street from an accident."
However, during the arguments on the motion to suppress, the following appears in the record: "The Witness [Toole]: He didn't abandon it. He said it" (Tr. at 82.) In view of Toole's previous testimony and the context in which this statement appears in the record, it appears that this statement was incorrectly attributed to Toole and was actually made by defense counsel. "This court is bound by the record," Hollins v. State, 415 So.2d 1249, 1252 (Ala.Cr.App. 1982), and we cannot violate the sanctity of that record, even to correct what we perceive may be a misstatement contained therein. However, under the authority of Rule 10(f), A.R.A.P., we may remand this cause to the trial court for the purpose of correcting this apparent misstatement in the record.
This case is therefore remanded to the circuit court with directions that a determination be made as to whether the statement quoted above was made by Officer Toole or by defense counsel. The trial court is directed to make written findings of fact regarding the matter. In the event this statement was incorrectly attributed to Officer Toole, the trial court shall order the record corrected. The trial court's findings, the transcript of the proceedings, and the corrected record, if any, shall be forwarded to this court for further review.
REMANDED WITH DIRECTIONS.
All Judges concur.

ON RETURN TO REMAND
BOWEN, Judge.
On return to remand, the trial judge found that the record on appeal incorrectly *1326 attributed the statement, "He didn't abandon it" to a witness, when, in fact, the statement was made by defense counsel. The judge's findings are based on the recollection of the court reporter, the prosecutor, and defense counsel. The trial judge has corrected the record.
With that correction, we find that the State presented sufficient evidence of abandonment and that the motion to suppress was properly denied. The judgment of the circuit court is affirmed.
OPINION EXTENDED; AFFIRMED.
All Judges concur.
NOTES
[1] We note that Toole properly advised Smith of his rights prior to any questioning. No contention to the contrary is asserted in this appeal, nor is there any claim that Smith's statements to Toole were involuntary.
[2] The state does not attempt to justify Toole's actions on the basis of the automobile exception to the warrant requirement. See Stanfield v. State, 529 So.2d 1053, 1059-60 (Ala.Cr.App. 1988). Inasmuch as Smith's car had been rendered immobile as a result of an accident, that exception, which "stem[s] from a car's inherent mobility, is not applicable in this situation. Rather, having been rendered immobile, the car should more appropriately be viewed as a container." State v. Foster, 110 Idaho 848, 718 P.2d 1286, 1287-88 (App.1986).