WINDOM, Presiding Judge.
Benjamin Carter Mays appeals his conviction for second-degree escape, see § 13A-10-32, Ala.Code 1975, and his resulting sentence of 17 years in prison. Because the evidence presented at trial was insufficient to sustain the conviction, this Court reverses Mays’s conviction and renders a judgment for him.
On May 19, 2011, Mays pleaded guilty in the Jackson District Court to possession of drug paraphernalia and was sentenced to one year in the Jackson County jail. That sentence was split, and Mays was ordered *508 to serve 97 days in jail[1] and was placed on probation for 24 months. On July 4, 2011, he was arrested by the Jackson County Sheriffs Department on new charges, and, on July 5, 2011, the State moved to revoke Mays’s probation. On August 19, 2011, Mays’s probation was revoked and he was “place[d] on house arrest” by the district court. (C. 90.)
Later that day, Mays went to the office of Brandon Brown, a court-referral and community-corrections officer with the Jackson County Community Punishment and Corrections Program. Brown and Mays completed the paperwork related to Mays’s house arrest. To effect the house arrest, Brown secured a bracelet on Mays’s ankle and gave him the equipment that was to be installed in his house. Brown never received a notification that the equipment had been installed.
After repeated unsuccessful attempts to contact Mays and learning that there was no telephone line installed in the house where Mays was supposed to be residing, Brown secured a warrant for Mays’s arrest. Mays was arrested on September 10, 2011.
In December 2011, Mays was indicted for one count of second-degree escape. The indictment specifically charged that Mays had “escapefd] or attempt[ed] to escape from a penal facility, to-wit: The Jackson County Jail.” (C. 7) (emphasis in original.) Following a jury trial, Mays was found guilty and was sentenced to 17 years in prison.
On appeal, Mays argues, among other things, that the State’s evidence was insufficient to support his conviction for second-degree escape because the State failed to present any evidence that he had escaped from a “penal facility.” Specifically, Mays argues that the undisputed evidence establishes that when his probation was revoked, he was “placed on house arrest.” (C. 90.) According to Mays, his house is not a “penal facility”; therefore, the State presented insufficient evidence to sustain his conviction. The State, on the other hand, argues that Mays was in constructive custody of the county jail; therefore, he was in the custody of a “penal facility.” Thus, the outcome of the appeal depends on whether a house constitutes a “penal facility” when a defendant was placed on house arrest. This Court holds that it does not; therefore, the State presented insufficient evidence to sustain Mays’s conviction.
Initially, this Court notes:
“In Ex parte J.C., 882 So.2d 274 (Ala. 2003), the Alabama Supreme Court stated the standard used to review a claim that the evidence produced at trial was legally insufficient to support a conviction:
“ ‘ “ ‘In determining the sufficiency of the evidence to sustain a conviction, a reviewing court must accept as true all evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider all evidence in a light most favorable to the prosecution. Faircloth v. State, 471 So.2d 485 (Ala.Crim.App.1984), affd, 471 So.2d 498 (Ala.1985).’ Powe v. State, 597 So.2d 721, 724 (Ala.1991). It is not the function of this Court to decide whether the evidence is believable beyond a reasonable doubt, Pennington v. State, 421 So.2d 1361 (Ala.Crim.App.1982); rather, the function of this Court is *509 to determine whether there is legal evidence from which a rational finder of fact could have, by fair inference, found the defendant guilty beyond a reasonable doubt. Davis v. State, 598 So.2d 1054 (Ala.Crim. App.1992). Thus, ‘[t]he role of appellate courts is not to say what the facts are. [Their role] is to judge whether the evidence is legally sufficient to allow submission of an issue for decision [by] the jury.’ Ex parte Bankston, 358 So.2d 1040, 1042 (Ala.1978) (emphasis original).”
“ ‘Ex parte Tiller, 796 So.2d 310, 312 (Ala.2001) (quoting Ex parte Woodall, 730 So.2d 652, 658 (Ala.1998)).’
“882 So.2d at 277.”
Reid v. State, 131 So.3d 635, 639 (Ala. Crim.App.2012).
Regarding statutory construction, the Alabama Supreme Court has stated:
“In any case involving statutory construction, our inquiry begins with the language of the statute, and if the meaning of the statutory language is plain, our analysis ends there. Ex parte Moore, 880 So.2d 1131, 1140 (Ala.2003) (‘ “ ‘The cardinal rule of statutory interpretation is to determine and give effect to the intent of the legislature as manifested in the language of the statute.’ ” ’) (quoting Ex parte Weaver, 871 So.2d 820, 823 (Ala.2003), quoting in turn Ex parte State Dep’t of Revenue, 683 So.2d 980, 983 (Ala.1996)). This Court in De-Kalb County LP Gas Co. v. Suburban Gas, Inc., 729 So.2d 270, 275-76 (Ala. 1998), explained:
“ ‘In determining the meaning of a statute, this Court looks to the plain meaning of the words as written by the legislature. As we have said:
“ ‘ “ ‘Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect.’ ” ’
“729 So.2d at 275-76 (quoting Blue Cross & Blue Shield v. Nielsen, 714 So.2d 293, 296 (Ala.1998), additional citations omitted). See also 729 So.2d at 276 (explaining that the separation-of-powers doctrine requires a court to use the plain-meaning rule in construing a statute and that ‘only if there is no rational way to interpret the words as stated will [a court] look beyond those words to determine legislative intent’).”
Ex parte McCormick, 932 So.2d 124, 132 (Ala.2005)
A person commits the crime of second-degree escape when “he escapes or attempts to escape from a penal facility.” § 13A-10-32(a), Ala.Code 1975. A “penal facility” is defined as “[a]ny security correctional institution for the confinement of persons arrested for, charged with or convicted of a criminal offense, including but not limited to the following security facilities: the state penitentiary and any branch thereof or any county or city jail.” § 13A-10 — 30(b)(3), Ala.Code 1975. See Black’s Law Dictionary 396, 1314 (9th ed.2009) (directing the reader seeking a definition of “correctional institution” to the definition of “prison” and defining “prison” as a “facility of confinement for convicted criminals, esp. felons”); Merriam-Webster’s Collegiate Dictionary 447 (11th ed.2003) (defining a facility as “something ... that is built, installed, or established to serve a particular purpose”).
Accepting all the evidence as true and according the State every legitimate inference from that evidence, this Court concludes that the State failed to present any *510 evidence indicating that Mays was confined in a “penal facility” as defined by statute. Specifically, Mays’s house, where he was sentenced to serve his house arrest, was not a “security correctional institution” and thus was not a “penal facility” as defined in § 13A-10-30(b)(3), Ala.Code 1975. Mays’s house was not “built, installed, or established to serve [the] particular purpose,” Merriam-Webster’s Collegiate Dictionary 447, “of confinement for convicted criminals,” Black’s Law Dictionary 1314. Accordingly, Mays’s house was not a “penal facility,” and the State failed to present sufficient evidence to sustain his conviction for second-degree escape.
The State, relying on Sommerville v. State, 555 So.2d 1165, 1166 (Ala.Crim.App. 1989), argues that Mays was in the constructive custody of the county jail; therefore, his conviction should be affirmed. Unlike Mays, who was placed on house arrest, Sommerville was serving a sentence as a “trusty” in a city jail and was allowed to leave the jail to work with the janitorial staff of the police department. Id. “A city jail is a penal facility.” Id. While working outside of the city jail, Sommerville escaped. Id. Sommerville was convicted of second-degree escape. Id. On appeal, he argued that the State presented insufficient evidence to sustain his conviction because he was not in custody when he escaped; instead, he was outside the jail on work release. Id. This Court rejected Sommerville’s argument. Specifically, this Court held that, although Sommerville was not in actual custody while on work release, he was in constructive custody. Id.
Unlike Sommerville, who was serving his sentence in the city jail and thus escaped from a penal facility, Mays had been placed on house arrest. As discussed above, Mays’s house was not a “security correctional institution” and thus was not a “penal facility” as that term is defined in § 13A-10-30(b)(3), Ala.Code 1975. Accordingly, the State’s argument that Mays was in constructive custody of a “penal facility” is without merit. Because the undisputed evidence demonstrates that Mays was released under house arrest and was not in a “penal facility” as defined in § 13A-10-30(b)(3), Ala.Code 1975, the circuit court erred in denying Mays’s motion for a judgment of acquittal. Therefore, this Court reverses Mays’s conviction and renders a judgment in favor of Mays.
REVERSED AND JUDGMENT RENDERED.
WELCH, KELLUM, BURKE, and JOINER, JJ., concur.

. Mays received 97 days of credit for the time he spent in jail awaiting the disposition of this case.